# Exhibit 7

**STATE OF INDIANA**

**INDIANA UTILITY REGULATORY COMMISSION**

| | |
|---|---|
| IN THE MATTER OF THE COMMISSION'S )<br>INVESTIGATION INTO ANY AND ALL )<br>MATTERS RELATED TO COMMISSION )<br>APPROVAL OF PARTICIPATION BY INDIANA )<br>END-USE CUSTOMERS IN DEMAND )<br>RESPONSE PROGRAMS OFFERED BY THE )<br>MIDWEST ISO AND PJM INTERCONNECTION )<br> )<br>RESPONDENTS: INDIANA REGULATED )<br>ELECTRIC UTILITIES ) | CAUSE NO. 43566 MISO 1<br><br>APPROVED: MAR 0 2 2011 |

**BY THE COMMISSION:**
Carolene R. Mays, Commissioner
Aaron A. Schmoll, Senior Administrative Law Judge

On December 10, 2010, Respondent Northern Indiana Public Service Company ("NIPSCO" or "Respondent") filed its Demand Response Tariff Compliance Filing initiating this subdocket, as required by the Commission's July 28, 2010 Order in Cause No. 43566 (the "Generic DR Order"). The filing included NIPSCO's Demand Response Resource, Type 1 ("DRR-1") Tariff and proposed service agreements for DRR-1 participants and for Aggregators of Retail Customers ("ARCs"). The filing also included NIPSCO's proposed Emergency Demand Response ("EDR") tariff and proposed service agreements for EDR participants and for ARCs.

On January 18, 2011, Energy Curtailment Specialists, Inc. ("ECS") filed verified comments in response to NIPSCO's Tariff Compliance Filing. ECS filed a Petition to Intervene on January 28, 2011. NIPSCO prefiled verified direct testimony from its witness Timothy R. Caister on February 1, 2011. On February 7, 2011, the Indiana Office of Utility Consumer Counselor ("OUCC") prefiled the direct testimony of Ronald L. Keen. The NIPSCO Industrial Group ("Industrial Group") filed its Petition to Intervene and Direct Testimony of James R. Dauphinais on February 9, 2011.

Pursuant to notice given and published as required by law, proof of which was incorporated into the record of this Cause by reference and placed in the official files of the Commission, a public hearing was held on Tuesday, February 22, 2011 at 9:30 a.m. in Room 224, PNC Center, 101 W. Washington Street, Indianapolis, Indiana. NIPSCO, ECS, the Industrial Group and the OUCC participated in the hearing. No members of the general public appeared. At the hearing, the comments and testimony prepared by NIPSCO, ECS, the Industrial Group and the OUCC were admitted into evidence.

Based on the law and the evidence of record, the Commission now finds that:

1.    **Notice and Jurisdiction.**  Due, legal and timely notice of the hearing in this Cause was given as required by law.  Petitioner published notice of the filing of its Petition in newspapers of general circulation in each county in which Petitioner has retail electric customers.  Petitioner is a "public utility" as defined in Ind. Code § 8-1-2-l(a) and an "eligible business" as defined in Ind. Code § 8-1-8.8-6 and is subject to the jurisdiction of this Commission in the manner and to the extent provided by Indiana law.  The Commission has jurisdiction over Petitioner and the subject matter of this Cause.

2.    **Background.**  Demand response broadly refers to programs designed to motivate retail customers to reduce or shift their consumption of electric energy during high-price or high-demand periods.  The Midwest Independent Transmission System Operator, Inc. ("MISO") market began allowing retail customers to participate in demand response programs in 2009.

Our Generic DR Order found that "Indiana end-use customers shall not be enrolled or otherwise participate in Regional Transmission Organization ("RTO") demand response programs directly or through curtailment service providers or other aggregators." Generic DR Order, 51.  The Commission instead ordered NIPSCO and the other Indiana jurisdictional electric utilities (collectively the "Respondent Utilities") to file with the Commission for approval tariffs or riders authorizing the participation of their respective retail customers in RTO demand response programs through the Respondent Utilities.  The Commission initiated two subdockets, one for MISO utilities and one for PJM utilities, to consider development of these tariffs.  *Id.* at 51.  To assist in establishing an appropriate framework for the development and filing of Respondent Utilities' tariff(s) or rider(s), we held a Prehearing and Technical Conference on September 7, 2010.  The Respondent Utilities and interested parties participated in the Technical Conferences.

3.    **Relief Requested.**  By its *Demand Response Tariff Compliance Filing,* NIPSCO seeks approval of its proposed tariffs for participation in DRR-1 and EDR offerings through NIPSCO, along with associated Standard Service Agreements.

4.    **Evidence Presented.**

a.    **NIPSCO Case-in-Chief.**  NIPSCO Director of Electric Regulatory Policy Timothy R. Caister presented testimony in support of NIPSCO's proposed tariffs and service agreements. Mr. Caister testified that NIPSCO garnered input from customers and potential customers before commencing drafting the riders and throughout the process. He explained that NIPSCO chose to offer DRR-1 and EDR programs because NIPSCO desires to offer programs where there is existing customer interest and the company has readily-available resources to assure a successful program. Mr. Caister testified that NIPSCO believes the proposed tariffs are in compliance with the Commission's Order in Cause No. 43566 and that it is reasonable and in the public interest to approve energy-only options at this time.

Mr. Caister indicated that NIPSCO will continue to work with its customers to review such options and develop corresponding tariffs that would facilitate their participation.  He said that NIPSCO would expect to review such options after the proposed tariffs are approved and possibly incorporate any further options in time for the 2012-2013 Midwest ISO planning year. According to Mr. Caister, NIPSCO is proposing to review the tariffs after two full summers of

2

participation and would include participants and interested parties. NIPSCO would then review the tariffs as part of any base rate case and would be open to making program changes as appropriate. As part of his testimony, Mr. Caister filed revised proposed tariffs and service agreements for both the DRR-1 and EDR programs.

b.    **OUCC Case-in-Chief.** Ronald L. Keen, Senior Utility Analyst in the Resource Planning and Communications Division of the OUCC, presented testimony that supported NIPSCO's proposed tariffs and service agreements. In addition, Mr. Keen testified that the OUCC's position is that Curtailment Service Providers ("CSPs" or "ARCs" as NIPSCO refers to them) must be an integral part of the process. While calling for consistency among the MISO utilities, Mr. Keen recommended that the Commission approve NIPSCO's proposed demand response tariff filing.

c.    **Industrial Group Case-in-Chief.** The Industrial Group submitted testimony from James R. Dauphinais, a Principal with Brubaker and Associates, Inc. Mr. Dauphinais testified that the Industrial Group met with the MISO utilities as a group on a few occasions to discuss the drafts the utilities had prepared. He added that the Industrial Group met, as time permitted, with the individual utilities, with most of the time being spent with NIPSCO. According to Mr. Dauphinais, NIPSCO and the Industrial Group both made concessions during the process and, in the end, the Industrial Group determined they could support the documents filed with Mr. Caister's testimony in order to resolve this matter. Mr. Dauphinais testified that the Industrial Group recommends approval of those documents.

d.    **ECS's Comments.** B. Marie Pieniazek submitted verified comments on behalf of ECS. Ms. Pieniazek commended the Midwest ISO utilities for their inclusion and support of demand response providers, ARCs or CSPs. She said that only the most sophisticated of customer would enroll in demand response tariffs and that the CSPs bridge the gap for smaller customers who wish to participate. Ms. Pieniazek expressed concern that NIPSCO's tariff only allowed for a consumption base line ("CBL") reduction and requested that the Commission direct NIPSCO to include a Firm Service Level ("FSL") baseline on its tariff. Additionally, ECS requested that the Commission order NIPSCO to change the $1,000 administrative fee from an annual fee to a one time fee.

e.    **NIPSCO's Response to ECS's Comments.** Mr. Caister addressed ECS's comments in his prefiled direct testimony. He explained that NIPSCO did not include a Firm Demand Level ("FDL") in its DRR-1 filing because Midwest ISO does not allow it as part of its DRR-1 program offering.[1] Regarding the administrative fee, Mr. Caister explained that the fee should be annual because it compensates NIPSCO for a number of expenses that NIPSCO will be responsible for on an on-going basis. According to Mr. Caister, when NIPSCO explained these issues to ECS, a review mechanism for the administrative fee was suggested. He testified that NIPSCO will plan to incorporate the administrative fee structure as part of the review process described in his testimony.

5.    **Commission Discussion and Findings.** In the "Generic DR Order, we required the filing of "tariffs or riders authorizing the participation of [its] retail customers in Midwest

---

[1] The FDL described in Mr. Caister's testimony is functionally identical to the FSL described by Ms. Pieniazek.

ISO demand response programs through the Respondent Utility[.]" Generic DR Order at 51. We find that NIPSCO has not only complied with that requirement through the proposed EDR and DRR-1 riders submitted in this proceeding, it has taken additional steps toward implementation of customer access to these programs through the development and submission of proposed standard agreements for both customers and ARCs. We also recognized that "each utility is different with unique load characteristics, cost structures and tariffs." Generic DR Order at 48. We believe that allowing differences in the tariffs also permits experimentation with the methodologies that can lead to adoption of best practices when the tariffs are revisited in 2 years.

It is evident that there was a significant degree of engagement and cooperation by the parties involved in this subdocket to develop a program that attempts to address a majority of the needs of potential participants while allowing NIPSCO the opportunity to learn more about demand response programs and customer interest before offering additional products. While ECS suggested changes to the proposed rider, no party argued for wholesale rejection of the proposed EDR and DRR-1 riders. As noted above, we believe that the best approach is a conservative one that allows the utilities to implement their proposed demand response tariffs and report on their respective experience over the next two years before considering whether changes are appropriate. We find that the riders and service agreements proposed by NIPSCO are supported by the evidence of record, consistent with our findings in Cause No. 43566 and should be approved.

Finally, in order to provide the Commission additional data concerning the distinctions among the demand response tariffs offered by the various Respondents, on or before October 31, 2012, Respondent shall file a report with the Commission, under this Cause, describing its experience with the tariff and outlining the costs and expenses associated with the tariff and the administrative charges collected. Respondent shall also provide discussion on the following issues, in addition to any other issues the utility finds appropriate:

1) how often the participants exceeded 10 or 15 offer changes per month;
2) how often the economic offers were accepted in the MISO markets;
3) how often the reliability offers were called on;
4) how the load reductions were measured or documented, and issues with customers meeting their commitments and whether this improved as customers gained experience;
5) the number of aggregators, the number of customers being served by the aggregators, the types of customers being served by aggregators, and how this compares to those customers participating directly with the utility.

Within 30 days of filling its report, the OUCC and intervenors may file comments on the report and addressing other issues with the tariff.

**IT IS THEREFORE ORDERED BY THE INDIANA UTILITY REGULATORY COMMISSION that:**

1. NIPSCO's proposed DRR-1 Rider, proposed DRR-1 Service Agreement for Participating Customers and Proposed DRR-1 Service Agreement for ARCs are hereby

approved. NIPSCO shall file a tariff sheet with the Commission's Electricity Division in compliance with the findings of this Order within two (2) business days of the effective date of this Order.

2.      NIPSCO's proposed EDR-1 Rider, proposed EDR-1 Service Agreement for Participating Customers and Proposed EDR-1 Service Agreement for ARCs are hereby approved. NIPSCO shall submit a tariff sheet to the Commission's Electricity Division in compliance with the findings of this Order within two (2) business days of the effective date of this Order.

3.      NIPSCO shall file its report, under this Cause and as addressed herein, with the Commission on or before October 31, 2012.

4.      This Order shall be effective on and after the date of its approval.

**ATTERHOLT, LANDIS, MAYS AND ZIEGNER CONCUR; BENNETT ABSENT:**

**APPROVED:**   MAR 0 2 2011

**I hereby certify that the above is a true
and correct copy of the Order as approved.**

*Brenda A. Howe*

Brenda A. Howe
**Secretary to the Commission**

5