# Exhibit 10

Indianapolis Power & Light Company          I.U.R.C. No. E-16          Original No. XXX
One Monument Circle
Indianapolis, Indiana

STANDARD CONTRACT RIDER NO. 23
MARKET BASED DEMAND RESPONSE RIDER
(Applicable to Rates HL, PL, PH and SL)

AVAILABILITY:

Available to the Rates HL, PL, PH, and SL Customers who enter into a written contract, fulfills the load requirement and can demonstrate the ability to reduce energy in accordance with the MISO requirements. ARCs may also aggregate Customers in accordance with a Standard Agreement and participate under this Rider.  Customers and ARCs are hereafter referred to as "Participants."  The term of such Standard Agreement shall have an initial period of one (1) year.  The Company reserves the right to deny any application on a non-discriminatory basis based on the criteria identified in this Rider and the Standard Agreement with Participants.  This Rider is not available to any Customer's service (either directly or through an ARC) that is otherwise participating in the Company's other interruptible or curtailment riders, including Riders 15, 16, 17 or 18.  Customers participating in Rider 14 may not make EDR offers.  The Company reserves the right to limit megawatt ("MW") participation in this Rider as set forth in the applicable MISO BPM.

DEFINITIONS:

| | |
|---|---|
| MISO: | Midwest Independent Transmission System Operator, Inc. |
| EDR: | Emergency Demand Response, a type of demand response resource as defined by MISO. |
| BPM: | MISO Business Practices Manual |
| DRR: | Demand Response Resource as defined in the BPM |
| ARC: | Aggregator of Retail Customers |
| Curtailment Energy: | The amount of load the Participant is capable of reducing from its Consumption Baseline. |
| Curtailment Period: | A period of time chosen by the Participant and included in its offer parameters during which the Participant makes available its load for curtailment under this Rider. |
| Consumption Baseline: | The Participant's actual usage as defined or accepted by MISO from time-to-time. |
| Firm Power Level: | The demand in kilowatt ("KW") that Participant agrees not to exceed during each Curtailment Period. |
| Retail Rate: | The Energy Charge set forth in the rate the Customer is served under plus any applicable Contract Rider assessed on an energy basis multiplied by the Curtailment Energy.  In the event the rate a Customer is served under includes multiple blocks of Energy Charges, the Retail Rate shall be based on the Energy Charge for the last block of energy set forth in the tariff. |

Respondent's Exhibit JEH-2

Indianapolis Power & Light Company        I.U.R.C. No. E-16        Original No. XXX
One Monument Circle
Indianapolis, Indiana

STANDARD CONTRACT RIDER NO. 23 (Continued)

PROGRAM DESCRIPTION:
Participation in this Rider is voluntary and offers Participant the opportunity to authorize the Company to market their Curtailment Energy in the MISO market and to share in any MISO revenues generated.  The Participant's Curtailment Energy is not eligible for enrollment in any other demand response program either directly or through a curtailment service provider.  Company will enter into a Standard Agreement under this Rider which will specify the terms and conditions under which Participant agrees to reduce usage.
Programs to be offered upon commencement of this Rider include:
1.    EDR Program which offers Customers the opportunity to reduce their electric costs and to help preserve reliable electric service by managing their electric usage during MISO declared emergency events.
2.    DRR Type 1 Program which offers Customers the opportunity to be compensated for energy use reductions by authorizing the Company to offer such reductions into the MISO market on an economic basis.

Participation will be permitted on any particular day.  Participants will be included in the daily offers to MISO unless they specify a desire not to participate on a particular day by the deadline established in the Standard Agreement.  Company must be notified pursuant to the Standard Agreement on any day Participant desires to suspend participation.

Company may agree to provide additional programs beyond EDR and DRR Type 1 permitted in the MISO market through a Standard Agreement under this Rider.  The availability of any Standard Agreement for a type of demand response program not specifically described in this Rider shall be subject to receipt of approval from the Indiana Utility Regulatory Commission ("Commission").  Program participation requirements will be detailed in the Standard Agreement including the ability to specify certain offer parameters.

CURTAILMENT ENERGY:
Participant must offer at least the minimum MW participation in this Rider as set forth in the applicable BPM for the type of resource offered.  Participant will provide at least 100 KW Curtailment Energy for each participating location for the EDR Program and at least 1 MW Curtailment Energy for the DRR Type 1 Program.  Each Participant electing service under this Rider shall contract for a definite amount of DRR, not to exceed the Customer's or aggregated Customers' normal demand capable of being curtailed.

Participant shall elect to participate in this Rider by choosing to:
1.    Curtail to the Firm Power Level; or
2.    Provide a specific level of demand reduction not to exceed the Participant's normal demand capable of being curtailed.

METERING REQUIREMENTS:
The Company will specify a communication plan in the Standard Agreement, which may include software, to be used to provide the Company with specified offer parameters and participation elections.  Participant will be responsible for providing its own internet access if needed.  Participant may purchase from either Company or other third-party suppliers any other necessary software, metering or other equipment to facilitate participation in this Rider.  It is Participant's responsibility to ensure the compatibility of third-party supplier equipment or software packages with any Company-owned equipment or software packages.

Effective Pending

Indianapolis Power & Light Company     I.U.R.C. No. E-16     Original No. XXX
One Monument Circle
Indianapolis, Indiana

STANDARD CONTRACT RIDER NO. 23 (Continued)

DRR TYPE 1 OFFERS:
When first registered, a default DRR Type 1 offer for economic energy will be established which will remain valid until updated or declared unavailable. All offers are applicable to every day noted in the DRR Type 1 offer. Default offers can only be made after the resource has been certified in compliance with MISO requirements. The initial registration fee shown below must be paid to the Company with submittal of the registration information.

EDR OFFERS:
When first registered, a default EDR offer will be established which will remain valid until updated or declared unavailable. All offers are applicable to every day noted in the EDR offer. Default offers can only be made after the resource has been certified in compliance with MISO requirements. The initial registration fee shown below must be paid to the Company with submittal of the registration information. If the resource is a Behind the Meter Generator ("BTMG"), the Customer must affirm in writing that: (1) it holds all necessary permits; (2) it possesses the necessary rights to operate the unit; (3) the BTMG is not a Network Resource (pursuant to MISO's FERC-approved tariff); and (4) if the resource is historically operated during non-emergency conditions, that the energy available for participation under this Rider is the increase in output that produces the demand reduction.

DAY AHEAD BID PROCESS:
The Participant shall submit the required information in the prescribed electronic format to the Company designee no later than the time stated in the Standard Agreement. The Participant's bid may be aggregated with other Participants' bids for submission to MISO.

MISO PERFORMANCE REQUIREMENTS:
Performance requirements are stated in the current BPM and Schedule 30 for EDR of the MISO Open Access Transmission Tariff which may be amended from time to time. It is the Participant's responsibility to comply with all of the minimum performance criteria specified by MISO. Participants must be able to accept dispatch instructions via an electronic interface.

PROCEDURES:
Registration requirements, notifications, performance, metering requirements and other operating procedures are contained in the Standard Agreement.

PENALTY FOR FAILURE TO PERFORM:
If the Participant does not reduce load by the bid amount within the prescribed notice time for the prescribed duration and other MISO parameters, the Company will incur penalties and other charges. Such penalties and other charges will be imposed on the Participant plus a $500 fee for the Company's administrative costs incurred to determine and pay the penalty to MISO. If the Participant fails to comply with the provisions of curtailment under this Rider, the Company and the Participant will discuss methods to comply during future events. The Company may suspend Participant from participation in this Rider if any penalty remains unpaid after becoming due. The Company may terminate the Participant's participation in this Rider if MISO precludes the Participant's load from being offered into the MISO market, Participant refuses to cooperate in registering the Participant's Load with MISO, or if Participant's failure to reduce load adversely impacts reliability.

SETTLEMENTS:
The Company will remit to Participant the net proceeds (the "MISO Proceeds") from participating in this Rider as a credit on the Participant's monthly bill within thirty (30) days after the final settlement and

                                                            Effective Pending

Indianapolis Power & Light Company       I.U.R.C. No. E-16       Original No. XXX
One Monument Circle
Indianapolis, Indiana

STANDARD CONTRACT RIDER NO. 23 (Continued)

payment by MISO to the Company for Participant's participation in the MISO market unless specifically provided otherwise in the Standard Agreement. The initial bill credit will reflect settlements between the Company and MISO through the most recent weekly net settlement invoice prior to the regular monthly bill. A true-up shall take place on the bill following any additional settlement from MISO. The Company will deduct the Retail Rate for the energy not consumed by the Customer pursuant to this Rider and any applicable administrative fees set forth below from the MISO Proceeds which shall be applied as a billing credit.

AGGREGATORS OF RETAIL CUSTOMERS:
A third-party may aggregate Customers to facilitate participation by Customers in this Rider subject to (a) measurement and verification of customer response in a manner satisfactory to the Company sufficient to allow the Company to comply with any and all MISO requirements and (b) satisfaction of reasonable and appropriate qualifications for any participating ARC. Each individual Customer in such an aggregation of Customers must be identified by the ARC and all information needed for and the requirements for MISO participation and registration must be provided by the ARC. Each individual Customer must be capable of the meeting the minimum Curtailment Energy requirements. The ARC will be subject to the same requirements set forth for Customers as set forth in this Rider and may be subject to additional requirements as specified in the applicable Service Agreement. A Customer may serve as an ARC. No Customer shall be represented by more than one ARC. No Customer may participate through an ARC while simultaneously participating directly in this Rider.

TERMS AND CONDITIONS:
Any interruptions or reductions in electric service caused by outages of Company's facilities, other than as provided under this Rider, will not be deemed a Curtailment Period under this Rider unless MISO reimburses the Company for Curtailment Energy. A Standard Agreement under this Rider will in no way affect Customer's or Company's respective obligations regarding the rendering of and payment for electric service under the applicable electric tariff and its applicable rate schedules. It will be Participant's responsibility to monitor and control their demand and energy usage before, during and after notice period under this Rider.

FEES:

| | |
|---|---|
| Annual Registration with Company | $1,000.00 |
| Modification to Registration | $ 100.00 |
| Additional day-ahead bid entry (per entry) | $ 50.00 |

For bids cleared by MISO:    Ten percent (10%) of the MISO Proceeds less any previously collected registration, modification, or additional day-ahead Bid Entry Fees not previously credited back to the Participant.

Effective Pending

**EMERGENCY DEMAND RESPONSE AGREEMENT**

**THIS EMERGENCY DEMAND RESPONSE AGREEMENT** ("Agreement") is made and entered into this ___ _____ day of _____, 20___ ("Effective Date"), by and between Indianapolis Power & Light Company, an Indiana corporation with its principal office located at One Monument Circle, Indianapolis, Indiana 46204 ("Company"), and, _____ ("Participant").   Company and Participant are hereinafter sometimes referred to individually as "Party" or collectively as "Parties".

**WITNESSETH:**

**WHEREAS,** Participant has or will contract with certain of Company customers (the "Aggregated Customers") capable of reducing load or providing energy during periods when the Midwest Independent Transmission System Operator, Inc. ("MISO") declares an emergency as defined by its Federal Energy Regulatory Commission ("FERC") approved tariffs; and

**WHEREAS**, Participant is willing to commit, in advance, to reduce its load when the Midwest Independent Transmission System Operator, Inc. ("MISO") instructs; and

**WHEREAS**, Company is willing to offer Participant's load reduction into MISO as an Emergency Demand Response ("EDR") resource into the MISO market and return to Participant a portion of MISO's payments for the EDR resource in accordance with the terms of this Agreement

**NOW, THEREFORE**, in consideration thereof, Participant and Company agree as follows:

**1.      Definitions.**  For purposes of this Agreement, the following terms shall have the meaning set forth:

Behind the Meter Generation ("BTMG"):

A generator operated by an Aggregated Customer that is capable of reducing the load the Aggregated Customer requires from Company during an EDR Event.  A Participant must certify, in writing, that: (1) the Aggregated Customer holds all necessary permits; (2) the Aggregated Customer possesses the necessary rights to operate the unit; (3) the BTMG is not a Network Resource pursuant to MISO's FERC approved tariff; and (4) if the resource is historically operated during non-emergency conditions, that the EDR Load is the increase in output that produces the demand reduction.

Curtailment:

A reduction of the Aggregated Customers' Consumption Baseline equal to the EDR Load as instructed by MISO during an EDR Event.

Consumption Baseline

The Aggregated Customers' actual usage in the hour prior to the start of the instructed curtailment or as otherwise defined by MISO from time-to-time.

Curtailment Period

A period of time chosen by the Participant and included in its offer parameters during which the Participant makes available the Aggregated Customers' load for curtailment.

IPL EDR Contract
041310

Respondent's Exhibit JEH-4

Firm Power Level:

The demand in KW that Participant agrees not to exceed during each Curtailment Period.

Guaranteed Load Drop:

A commitment by the Aggregated Customers' to curtail their load each hour during an event by a fixed amount equal to the amount of load reduction from the Consumption Baseline.

EDR Event

A load curtailment event as dispatched by MISO during a MISO declared emergency.

EDR Load

The quantity of the Aggregated Customers' load provided by the Company that the the Aggregated Customers commits to reduce during an EDR Event.

IURC

The Indiana Utility Regulatory Commission.

MISO

The Midwest Independent Transmission System Operator, Inc.

Retail Rate

The Energy Charge set forth in the rate the Customer is served under plus any applicable Contract Rider assessed on an energy basis multiplied by the Curtailment Energy.  In the event the rate a Customer is served under includes multiple blocks of Energy Charges, the Retail Rate shall be based on the Energy Charge for the last block of energy set forth in the tariff.

**2.     Application.**  It is understood and agreed that this Agreement applies only to the operation of Participant's locations at _____ (the "Participant's Locations").  Each of Participant's Locations must be registered to Curtail at least 100 KW.

**3.     Load Reduction.**  Participant shall designate an EDR Load to be achieved through (i) a Firm Power Level, (ii) a Guaranteed Load Drop, or (iii) BTMG identified in Exhibit 1.  Under either election, the Participant shall authorize Company to offer the EDR Load into the MISO in accordance with Section 4 below.  The EDR Load shall be identified in Exhibit 1.  Participant's EDR Load shall not be committed to load curtailment under Riders 14, 15, 16, 17 or 18, MISO or any other entity.  The Participant assumes all responsibility for ensuring the EDR Load complies with all of the minimum performance criteria specified by MISO in its Business Practices Manual ("BPM"), Schedule 30 of the MISO Open Access Transmission Tariff, or successor MISO criteria.  The Parties shall cooperate as necessary to ensure the EDR Load complies with MISO performance criteria.  If Customer desires only one Curtailment per day, then Customer should set offer parameters including Minimum Interruption Duration, Maximum Interruption Duration and Minimum Non-Interruption Interval to appropriate values.  Customer shall be subject to testing and metering requirements of the MISO for EDR resources, as this term is defined by MISO and as specified in the applicable BPM.

**4.     EDR Load Offer.**  The Company will offer the EDR Load into the MISO market during an EDR Event at the price set forth in Exhibit 1 (hereafter the "Offer") upon Participant's submission of Exhibit 1 in

IPL EDR Contract
041310                                          -2-

accordance with Section 5 below. Participant will not be contacted prior to Company making the Offer to the MISO market. Participant may limit the number of events per day in Exhibit 1 and Company will limit offers to that number. Company is not responsible for MISO's decision to accept or reject an offer made in accordance with this Agreement. When first registered, a default offer will be established by the Participant in Exhibit 1 which will remain valid until updated or declared unavailable by the Participant by providing notice in accordance with Section 5 below. Participant may update its Offer with the Company daily, provided that such updates are provided in accordance with Section 5 below by 9:00 A.M. Eastern Standard Time the day prior to the day the status is to be effective. All Offers are applicable to every day noted in Exhibit 1. Default offers utilizing a BTMG will not be made by the Company until the Participant's BTMG has been certified by MISO.

**5.     EDR Load Status.**   Customer may update its participation status ("Participating" or "Not Participating") daily through notice to Company. Status updates must be received by 9:00 A.M. Eastern Standard Time. Customers must specify a "Not Participating" status if load reduction is unavailable due to a forced or planned outage/shutdown or other physical operating restriction. Other offer parameters, including the Offer, may be updated daily through notice to Company pursuant to Exhibit 1. Status updates must be received by 9:00 A.M. Eastern Standard Time the day prior to the day the status or parameter change will be effective. Customer shall pay $100 for each additional change, which shall be included on the Customer's monthly bill and will first be netted against any Settlement. All changes are subject to MISO limitations and will not permanently update the Customer's default offer unless specified by Customer. Customer is responsible for meeting all offer obligations when the offer is cleared.

**6.     Customer Offer Parameters.**   Customer may specify temporary or permanent changes to its default offer parameters for each hour as specified in the relevant BPM. All costs are subject to MISO specified limits and MISO independent market monitor review. Company reserves the right to review daily offers and reject Customer proposed changes if offers contain errors or may create reliability concerns. All updates must be received by 9:00 A.M. Eastern Standard Time the day prior to the day the status or parameter change will be effective.

**7.     Curtailment.**   If MISO accepts the Offer, the Company will inform Participant's designated representatives in accordance with the order and method of communicating in Exhibit 2 within 30 minutes of receiving the dispatch instructions from MISO. Company will utilize email as the primary means to notify Customer of events and to process Customer participation updates. In the event email is not effective or Company receives a notice of failure of its email to the Customer, Company shall fax notice to the Customer. Customers will be responsible for providing their own Internet access. Participant assumes all responsibility for monitoring the methods of communication outlined in Exhibit 2 and Company shall have no responsibility for MISO penalties incurred due to Participant's failure to implement a Curtailment provided the Company has provided notice to Participant of acceptance of the Offer in accordance with Exhibit 2.

**8.     Settlements.**   The Company will remit to Participant the net proceeds from participating in this Agreement (the "Settlement") within 30 days after the final settlement and payment by MISO as a result of MISO's acceptance of the Offer less (i) 10%, which amount shall be retained by Company, and (ii) the Retail Rate for the energy not consumed by the Participant due to the Curtailment. The 10% retained by the Company shall be reduced by the amount of any Registration, Modification or Additional day-ahead bid entry fees paid by Participant to Company. The initial bill credit will reflect settlements between the Company and MISO through the most recent weekly net settlement invoice prior to the regular monthly bill. A true-up shall take place on the bill following any additional settlement from MISO. The Settlement will appear as a credit on Participant's bill from Company. Participant shall notify Company if Participant disputes any payments and/or charges or penalties resulting from this Agreement. Such disputes shall be addressed in accordance with Section 20.

**9.     Penalties.**   Participant shall reimburse Company for any MISO penalties incurred by Company plus $500 resulting from Participant's failure to curtail its EDR Load (i) within the prescribed notice time, (ii) for the prescribed duration or (iii) in accordance with other MISO parameters. Participant shall also forfeit and return any Settlement paid pursuant to Section 8 above for EDR Load that was not curtailed (i)

IPL EDR Contract
041310                                      -3-

within the prescribed notice time, (ii) for the prescribed duration or (iii) in accordance with other MISO parameters.

**10.      Tariff.**  This Agreement is entered into subject to the terms of Company's Rates, Rules and Regulations for Electric Service, I.U.R.C. No. E-16, and any successor electric tariff, as filed with the IURC and as amended from time to time ("Tariff"), including without limitation Standard Contract Rider No. 23.

**11.      Registration Requirements.**  Participant shall provide any information required by MISO in addition to the information included in Exhibits 1 and 2.

**12.      Participant Required Equipment.**  Participant shall be solely responsible for the cost of purchasing and installing any additional software, metering or other equipment necessary to enable participation in this Agreement.  Company may, upon request of Participant and at Participant's expense, install any software, meter or equipment necessary.  The software, metering and equipment the Parties have agreed the Company will install at the Participant's expense are set forth in Exhibit 2.

**13.      Interruption in Participant's Service.**  Any interruptions or reductions in electric service caused by outages of Company's facilities, other than as provided under this Agreement will not be deemed a Curtailment under this Agreement unless MISO pays Company for the Curtailment.  This Agreement shall not be construed as any promise or warranty by Company to provide continuous or uninterrupted power to Participant.

**14.      Participant Maintenance.**  Participant must inform Company of any plant maintenance that will significantly change the Consumption Baseline.  EDR offers are not permitted for curtailments planned or unplanned for any reason other than notification by Company of an accepted EDR offer.

**15.      Failure to Perform.**  Company may terminate this Agreement with Participant if (i) MISO refuses to accept the EDR Load for failure to perform or otherwise comply with applicable MISO requirements; (ii) Participant refuses to cooperate in registering the EDR Load with MISO; or (iii) Participant's failure to perform causes a reliability concern on Company's distribution or transmission system.  The Company may suspend performance during a period in which Participant fails to pay undisputed penalties in accordance with Section 9 above.

**Effective Term and Termination Rights.**  This Agreement shall become effective after execution by both Parties and receipt of a fully completed Exhibits 1 and 2.  The term of this Agreement shall be 1 year. This Agreement shall be renewed for up to two additional one-year terms subject to the right of either party to provide notice of termination 60-days prior to the expiration of the initial or any subsequent term.

**17.      Assignment.**  Neither Party shall assign this Agreement or any portion thereof without the prior written consent of the other Party, which consent may not be unreasonably withheld, and any attempted assignment or transfer without such written consent shall be of no force or effect.  As to any permitted assignment: (a) reasonable prior notice of any such assignment shall be given to the other Party; and (b) any assignee shall expressly assume the assignor's obligations hereunder, unless otherwise agreed to by the other Party in writing.

**18.      Termination of Any Applicable Existing Agreement.**  From and after the date when service commences under this Agreement, this Agreement shall supersede any oral and/or written agreement or understanding between Company and Participant concerning the service covered by this Agreement and any such agreement or understanding shall be deemed to be terminated as of the date service commences under this Agreement.

**19.      Force Majeure.**  For purposes of this Agreement, the term "Force Majeure" means any cause or event not reasonably within the control of the Party claiming Force Majeure, including, but not limited to, the following: acts of God, strikes, lockouts, or other industrial disturbances; acts of public enemies;

IPL EDR Contract
041310                                          -4-

orders or permits or the absence of the necessary orders or permits of any kind which have been properly applied for from the government of the United States, the State of Indiana, any political subdivision or municipal subdivision or any of their departments, agencies or officials, or any civil or military authority; unavailability of a fuel or resource used in connection with the generation of electricity; extraordinary delay in transportation; unforeseen soil conditions; equipment, material, supplies, labor or machinery shortages; epidemics; landslides; lightning; earthquakes; fires; hurricanes; tornadoes; storms; floods; washouts; drought; arrest; war; civil disturbances; explosions; breakage or accident to machinery, transmission lines, pipes or canals; partial or entire failure of utilities; breach of contract by any supplier, contractor, subcontractor, laborer or materialman; sabotage; injunction; blight; famine; blockade; or quarantine.

If either Party is rendered wholly or partly unable to perform its obligations under this Agreement because of Force Majeure, both Parties shall be excused from whatever obligations under this Agreement are affected by the Force Majeure (other than the obligation to pay money) and shall not be liable or responsible for any delay in the performance of, or the inability to perform, any such obligations for so long as the Force Majeure continues. The Party suffering an occurrence of Force Majeure shall, as soon as is reasonably possible after such occurrence, give the other Party written notice describing the particulars of the occurrence and shall use commercially reasonable efforts to remedy its inability to perform; provided, however, that the settlement of any strike, walkout, lockout or other labor dispute shall be entirely within the discretion of the Party involved in such labor dispute.

**20.    Disputes.**  In the event of a dispute between the Parties arising out of or relating to this Agreement, such dispute shall be submitted within twenty (20) days of written notice, to a management panel composed of representatives of the respective Parties for informal dispute resolution or settlement prior to the institution of any other dispute resolution process.  Should the informal dispute resolution process described herein be unsuccessful, the Parties agree that no written or oral representations made during the course of the attempted dispute resolution shall constitute a Party's admission or waiver and that each Party may pursue any other legal or equitable remedy it may have available to it.  The Parties agree that the existence of any dispute or the institution of any dispute resolution process (either formal or informal) shall not delay the performance of each Party's undisputed responsibilities under this Agreement.

**21.    Notices.**  Except for notices required by Section 7 and as otherwise provided in this Agreement, any notice, request, consent, demand, or statement which is contemplated to be made upon either Party hereto by the other Party hereto under any of the provisions of this Agreement, shall be in writing and sent by certified mail with a return receipt requested or via overnight courier with tracking capability to the address set forth below:

    If notice or other transmittal (other than payment of invoices) is to Company:

        Indianapolis Power & Light Company
        One Monument Circle
        Indianapolis, IN 46204
        Attention:  Director, Regulatory Affairs

    With a copy to:

        Indianapolis Power & Light Company
        One Monument Circle
        Indianapolis, IN  46204
        Attention:  Office of the General Counsel

    If notice or other transmittal is to Participant:

<div style="margin-left:20%">

_____

_____

_____

Attention:

</div>

With a copy to:

<div style="margin-left:20%">

_____

_____

_____

Attention:    _____

</div>

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, effective as of the Effective Date first above written.

| **Indianapolis Power & Light Company ("Company")** | **_____ ("Participant")** |
|---|---|
| By:_____ | By:_____ |
| Printed:_____ | Printed:_____ |
| Title:_____ | Title:_____ |
| Execution Date:_____ | Execution Date:_____ |

IPL EDR Contract
041310                                      -6-

**EXHIBIT 1**

**EMERGENCY DEMAND RESPONSE AGREEMENT**

Participant Information:

| | | | |
|---|---|---|---|
| ***Participant Name***: | | | |
| ***Participant Location***<br>Street Address | City | | State/Zip |
| *Account Number:* | | | |

Effective Date

The first day of the month for which this monthly offer is valid is _____.

EDR Load

Participant's EDR Load shall be as follows:

| *Source* | *Quantity* | |
|---|---|---|
| | ***Prior*** | ***Prospective*** |
| Firm Power Level | | |
| Guaranteed Load Drop | | |
| BTMG | | |

If using a BTMG, please identify the primary fuel source of the BTMG: _____

Day-Ahead Schedule Default Hourly Offer Parameters:

| Hour (EST) | Energy Offer ($/MWH) | Hourly Curtailment Offer ($/Hr) | Targeted Demand Reduction Level (MW) | Energy Commitment Status |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |

IPL EDR Contract
041310                    -7-

| | | | | |
|---|---|---|---|---|
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |

| | Current | New |
|---|---|---|
| Number of Events Permitted per Day (Number/day) | | |
| Specify Shutdown Amount ($/shutdown) | | |
| Specify Notification Time Required (Hours) (time must include 30 minutes for Company to provide notice to Participant from MISO) | | |
| Minimum Reduction Megawatt value | | |
| Maximum Reduction Megawatt value | | |
| Minimum Reduction Time in Hours | | |
| Maximum Reduction Time in Hours | | |
| Reduction Notification Time in Hours | | |
| Ending date of the offer | | |
| Days of the week available | | |

Submitted to Company this __ day of _____ 20__,

**("Participant")**

By:_____

Printed:_____

Title:_____

IPL EDR Contract
041310                                    -9-

**EXHIBIT 2**

**EMERGENCY DEMAND RESPONSE AGREEMENT**

Participant Information:

| *Participant Name:* | | |
|---|---|---|
| *Participant Location*<br>Street Address | City | State/Zip |
| *Account Number:* | | |

Participant Contact Information

  If MISO accepts an Offer requiring a Participant Curtailment or BTMG operation, Participant identifies the following contact personnel with whom Company will communicate a Curtailment.

| *Primary Contact*<br>Name: | |
|---|---|
| Email: | Fax No.: |
| *Secondary Contact*<br>Name: | |
| Email: | Fax No.: |

Baseline Load

  Participant's Baseline Load is as follows: _____

Company Installed Equipment:

  The following additional software, metering or other equipment will be installed by the Company. Participant shall reimburse Company for all actual costs, which may vary from the estimated cost set forth below:

| *Equipment* | *Estimated Cost* |
|---|---|
|  |  |
|  |  |

IPL EDR Contract
041310

Accepted:

**Indianapolis Power & Light Company**
**("Company")**

By:_____

Printed:_____

Title:_____

_____
**("Participant")**

By:_____

Printed:_____

Title:_____

IPL EDR Contract
041310                                    -11-

**DEMAND RESPONSE RESOURCE TYPE 1 AGREEMENT**

**THIS DEMAND RESPONSE RESOURCE TYPE 1 ("DRR-1") AGREEMENT** ("Agreement") is made and entered into this _____ day of _____, 20__ ("Effective Date"), by and between Indianapolis Power & Light Company, an Indiana corporation with its principal office located at One Monument Circle, Indianapolis, Indiana 46204 ("Company"), and, _____ ("Participant"). Company and Participant are hereinafter sometimes referred to individually as "Party" or collectively as "Parties".

**WITNESSETH:**

**WHEREAS,** Participant is capable of supplying a fixed, pre-specified quantity of energy through physical load reduction when instructed by the Midwest Independent Transmission System Operator, Inc. ("MISO"); and

**WHEREAS**, Participant is willing to commit, in advance, to reduce its load when MISO instructs; and

**WHEREAS**, Company is willing to offer Participant's load reduction into MISO as a Demand Response Resource Type 1 ("DRR-1") into the MISO market and return to Participant a portion of MISO's payments for the DRR-1 in accordance with the terms of this Agreement.

**NOW, THEREFORE**, in consideration thereof, Participant and Company agree as follows:

**1.     Definitions.**  For purposes of this Agreement, the following terms shall have the meaning set forth:

Curtailment:

> A reduction of Participant's Consumption Baseline equal to the DRR-1 Load as instructed by MISO.

Consumption Baseline

> The Participant's actual usage as defined or accepted by MISO from time-to-time.

Curtailment Period

> A period of time chosen by the Participant and included in its offer parameters during which the Participant makes available its load for curtailment.

DRR-1 Load

> The quantity of Participant's load provided by the Company that the Participant commits to reduce if instructed by MISO.

IURC

> The Indiana Utility Regulatory Commission.

MISO

> The Midwest Independent Transmission System Operator, Inc.

IPL Rate REP Contract
041310

Respondent's Exhibit JEH-6

Retail Rate

The Energy Charge set forth in the rate the Customer is served under plus any applicable Contract Rider assessed on an energy basis multiplied by the Curtailment Energy. In the event the rate a Customer is served under includes multiple blocks of Energy Charges, the Retail Rate shall be based on the Energy Charge for the last block of energy set forth in the tariff.

**2.      Application.**  It is understood and agreed that this Agreement applies only to the operation of Participant's location at _____ (the "Participant's Location").

**3.      Load Reduction.**  Participant shall designate a fixed DRR-1 Load to be achieved through (i) a Firm Power Level, or (ii) a Guaranteed Load Drop identified in Exhibit 1. Under either election, the Participant shall authorize Company to offer the DRR-1 Load into the MISO in accordance with Section 4 below. The DRR-1 Load shall be identified in Exhibit 1. Participant's DRR-1 Load shall not be committed under Riders 15, 16, 17 or 18, MISO or any other entity. The Participant assumes all responsibility for ensuring the DRR-1 Load complies with all of the minimum performance criteria specified by MISO in its Business Practices Manual ("BPM"), Schedule 30 of the MISO Open Access Transmission Tariff, or successor MISO criteria. The Parties shall cooperate as necessary to ensure the DRR-1 Load complies with MISO performance criteria. If Customer desires only one Curtailment per day then Customer should set offer parameters including Minimum Interruption Duration, Maximum Interruption Duration, and Minimum Non-Interruption Interval to appropriate values. Customer shall be subject to testing and metering requirements of the MISO for DRR Type 1 resources, as this term is defined by MISO, as specified in the applicable BPM.

**4.      DRR-1 Load Offer.**  The Company will offer the DRR-1 Load into the MISO market at the price set forth in Exhibit 1 (hereafter the "Offer") upon Participant's submission of Exhibit 1 in accordance with Section 5 below. Participant will not be contacted prior to Company making the Offer to the MISO market. Participant may limit the number of events per day in Exhibit 1 and Company will limit offers to that number. Company is not responsible for MISO's decision to accept or reject an offer made in accordance with this Agreement. When first registered, a default offer will be established by the Participant in Exhibit 1 which will remain valid until updated or declared unavailable by the Participant by providing notice in accordance with Section 5 below. Participant may update its Offer with the Company daily, provided that such updates are provided in accordance with Section 5 below by 9:00 A.M. Eastern Standard Time the day prior to the day the status is to be effective. All Offers are applicable to every day noted in Exhibit 1.

**5.      DRR-1 Load Status.**  Customer may update its participation status ("Participating" or "Not Participating") daily through notice to Company. Status updates must be received by 9:00 A.M. Eastern Standard Time. Customers must specify a "Not Participating" status if load reduction is unavailable due to a forced or planned outage/shutdown or other physical operating restriction. Other offer parameters, including the Offer, may be updated daily through notice to Company pursuant to Exhibit 1. Status updates must be received by 9:00 A.M. Eastern Standard Time the day prior to the day the status or parameter change will be effective. Customer shall pay $100 for each additional change, which shall be included on the Customer's monthly bill and will first be netted against any Settlement. All changes are subject to MISO limitations and will not permanently update the Customer's default offer unless specified by Customer. Customer is responsible for meeting all offer obligations when the offer is cleared.

**6.      Customer Offer Parameters.**  Customer may specify temporary or permanent changes to its default offer parameters for each hour as specified in the relevant BPM. All costs are subject to MISO specified limits and MISO independent market monitor review. Company reserves the right to review daily offers and reject Customer proposed changes if offers contain errors or may create reliability concerns. All updates must be received by 9:00 A.M. Eastern Standard Time the day prior to the day the status or parameter change will be effective.

**7.      Curtailment.**  If MISO accepts the Offer, the Company will inform Participant's designated representatives in accordance with the order and method of communicating in Exhibit 2 within 30 minutes

IPL DRR-1 (Individual Customer) Contract
041310                                          -2-

of receiving the dispatch instructions from MISO. Company will utilize email as the primary means to notify Customer of events and to process Customer participation updates. In the event email is not effective or Company receives a notice of failure of its email to the Customer, Company shall fax notice to the Customer. Customers will be responsible for providing their own Internet access. Participant assumes all responsibility for monitoring the methods of communication outlined in Exhibit 2 and Company shall have no responsibility for MISO penalties incurred due to Participant's failure to implement a Curtailment provided the Company has provided notice to Participant of acceptance of the Offer in accordance with Exhibit 2.

8.      **Settlements.** The Company will remit to Participant the net proceeds from participating in this Agreement (the "Settlement") within 30 days after the final settlement and payment by MISO as a result of MISO's acceptance of the Offer less (i) 10%, which amount shall be retained by Company, and (ii) the Retail Rate for the energy not consumed by the Participant due to the Curtailment. The 10% retained by the Company shall be reduced by the amount of any Registration, Modification or Additional day-ahead bid entry fees paid by Participant to Company. The initial bill credit will reflect settlements between the Company and MISO through the most recent weekly net settlement invoice prior to the regular monthly bill. A true-up shall take place on the bill following any additional settlement from MISO. The Settlement will appear as a credit on Participant's bill from Company. Participant shall notify Company if Participant disputes any payments and/or charges or penalties resulting from this Agreement. Such disputes shall be addressed in accordance with Section **Error! Reference source not found.**.

9.      **Penalties.** Participant shall reimburse Company for any MISO penalties incurred by Company plus $500 resulting from Participant's failure to curtail its DRR-1 Load (i) within the prescribed notice time, (ii) for the prescribed duration or (iii) in accordance with other MISO parameters. Participant shall also forfeit and return any Settlement paid pursuant to Section 8 above for DRR-1 Load that was not curtailed (i) within the prescribed notice time, (ii) for the prescribed duration or (iii) in accordance with other MISO parameters.

10.     **Tariff.** This Agreement is entered into subject to the terms of Company's Rates, Rules and Regulations for Electric Service, I.U.R.C. No. E-16, and any successor electric tariff, as filed with the IURC and as amended from time to time ("Tariff"), including without limitation Standard Contract Rider No. 23.

11.     **Registration Requirements.** Participant shall provide any information required by MISO in addition to the information included in Exhibits 1 and 2.

12.     **Participant Required Equipment.** Participant shall be solely responsible for the cost of purchasing and installing any additional software, metering or other equipment necessary to enable participation in this Agreement. Company may, upon request of Participant and at Participant's expense, install any software, meter or equipment necessary. The software, metering and equipment the Parties have agreed the Company will install at the Participant's expense is set forth in Exhibit 2.

13.     **Interruption in Participant's Service.** Any interruptions or reductions in electric service caused by outages of Company's facilities, other than as provided under this Agreement will not be deemed a Curtailment under this Agreement unless MISO pays Company for the Curtailment. This Agreement shall not be construed as any promise or warranty by Company to provide continuous or uninterrupted power to Participant.

14.     **Participant Maintenance.** Participant must inform Company of any plant maintenance that will significantly change the Consumption Baseline. DRR-1 offers are not permitted for curtailments planned or unplanned for any reason other than notification by Company of a cleared DRR-1 offer.

15.     **Failure to Perform.** Company may terminate this Agreement with Participant if (i) MISO refuses to accept the DRR-1 Load for failure to perform or otherwise comply with applicable MISO requirements; (ii) Participant refuses to cooperate in registering the DRR-1 Load with MISO; or (iii) Participant's failure to perform causes a reliability concern on Company's distribution or transmission system. The Company

may suspend performance during a period in which Participant fails to pay undisputed penalties in accordance with Section 9 above.

**Effective Term and Termination Rights.**  This Agreement shall become effective after execution by both Parties and receipt of a fully completed <u>Exhibits 1 and 2</u>.  The term of this Agreement shall be 1 year. This Agreement shall be renewed for up to two additional one-year terms subject to the right of either party to provide notice of termination 60-days prior to the expiration of the initial or any subsequent term.

**17.    Assignment.**  Neither Party shall assign this Agreement or any portion thereof without the prior written consent of the other Party, which consent shall not be unreasonably withheld, and any attempted assignment or transfer without such written consent shall be of no force or effect.  As to any permitted assignment: (a) reasonable prior notice of any such assignment shall be given to the other Party; and (b) any assignee shall expressly assume the assignor's obligations hereunder, unless otherwise agreed to by the other Party in writing.

**18.    Termination of Any Applicable Existing Agreement.**  From and after the date when service commences under this Agreement, this Agreement shall supersede any oral and/or written agreement or understanding between Company and Participant concerning the service covered by this Agreement and any such agreement or understanding shall be deemed to be terminated as of the date service commences under this Agreement.

**19.    Force Majeure.**  For purposes of this Agreement, the term "Force Majeure" means any cause or event not reasonably within the control of the Party claiming Force Majeure, including, but not limited to, the following: acts of God, strikes, lockouts, or other industrial disturbances; acts of public enemies; orders or permits or the absence of the necessary orders or permits of any kind which have been properly applied for from the government of the United States, the State of Indiana, any political subdivision or municipal subdivision or any of their departments, agencies or officials, or any civil or military authority; unavailability of a fuel or resource used in connection with the generation of electricity; extraordinary delay in transportation; unforeseen soil conditions; equipment, material, supplies, labor or machinery shortages; epidemics; landslides; lightning; earthquakes; fires; hurricanes; tornadoes; storms; floods; washouts; drought; arrest; war; civil disturbances; explosions; breakage or accident to machinery, transmission lines, pipes or canals; partial or entire failure of utilities; breach of contract by any supplier, contractor, subcontractor, laborer or materialman; sabotage; injunction; blight; famine; blockade; or quarantine.

If either Party is rendered wholly or partly unable to perform its obligations under this Agreement because of Force Majeure, both Parties shall be excused from whatever obligations under this Agreement are affected by the Force Majeure (other than the obligation to pay money) and shall not be liable or responsible for any delay in the performance of, or the inability to perform, any such obligations for so long as the Force Majeure continues.  The Party suffering an occurrence of Force Majeure shall, as soon as is reasonably possible after such occurrence, give the other Party written notice describing the particulars of the occurrence and shall use commercially reasonable efforts to remedy its inability to perform; provided, however, that the settlement of any strike, walkout, lockout or other labor dispute shall be entirely within the discretion of the Party involved in such labor dispute.

**20.    Disputes.**  In the event of a dispute between the Parties arising out of or relating to this Agreement, such dispute shall be submitted within twenty (20) days of written notice, to a management panel composed of representatives of the respective Parties for informal dispute resolution or settlement prior to the institution of any other dispute resolution process.  Should the informal dispute resolution process described herein be unsuccessful, the Parties agree that no written or oral representations made during the course of the attempted dispute resolution shall constitute a Party's admission or waiver and that each Party may pursue any other legal or equitable remedy it may have available to it.  The Parties agree that the existence of any dispute or the institution of any dispute resolution process (either formal or informal) shall not delay the performance of each Party's undisputed responsibilities under this Agreement.

IPL DRR-1 (Individual Customer) Contract
041310                    -4-

**21.    Notices.**  Except for notices required by Section 7 and as otherwise provided in this Agreement, any notice, request, consent, demand, or statement which is contemplated to be made upon either Party hereto by the other Party hereto under any of the provisions of this Agreement, shall be in writing and sent by certified mail with a return receipt requested or via overnight courier with tracking capability to the address set forth below:

If notice or other transmittal (other than payment of invoices) is to Company:

Indianapolis Power & Light Company
One Monument Circle
Indianapolis, IN 46204
Attention:  Director, Regulatory Affairs

With a copy to:

Indianapolis Power & Light Company
One Monument Circle
Indianapolis, IN  46204
Attention:  Office of the General Counsel

If notice or other transmittal is to Participant:

Attention:

With a copy to:

Attention:

**IN WITNESS WHEREOF**, the Parties have executed this Agreement, effective as of the Effective Date first above written.

**Indianapolis Power & Light Company**
**("Company")**

_____
**("Participant")**

By:_____

By:_____

Printed:_____

Printed:_____

Title:_____

Title:_____

Execution Date:_____

Execution Date:_____

**EXHIBIT 1**

**DEMAND RESPONSE RESOURCE TYPE 1 AGREEMENT**

Participant Information:

| | | |
|---|---|---|
| ***Participant Name***: | | |
| ***Participant Location*** Street Address | City | State/Zip |
| *Account Number:* | | |

Effective Date

The first day of the month for which this monthly offer is valid is _____.

DRR-1 Load

Participant's DRR Type 1 Load shall be as follows:

| Source | Quantity | |
|---|---|---|
| | Prior | Prospective |
| Firm Power Level | | |
| Guaranteed Load Drop | | |
| BTMG | | |

If using a BTMG, please identify the primary fuel source of the BTMG: _____

Day-Ahead Schedule Default Hourly Offer Parameters:

| Hour (EST) | Energy Offer ($/MWH) | Hourly Curtailment Offer ($/Hr) | Targeted Demand Reduction Level (MW) | Energy Commitment Status |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |

IPL DRR-1 (Individual Customer) Contract
041310                        -6-

-7-

| | | | | |
|---|---|---|---|---|
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |

| | Current | New |
|---|---|---|
| Number of Events Permitted per Day (Number/day) | | |
| Specify Shutdown Amount ($/shutdown) | | |
| Specify Notification Time Required (Hours) (time must include 30 minutes for Company to provide notice to Participant from MISO) | | |
| Minimum Reduction Megawatt value | | |
| Maximum Reduction Megawatt value | | |
| Minimum Reduction Time in Hours | | |
| Maximum Reduction Time in Hours | | |
| Reduction Notification Time in Hours | | |
| Ending date of the offer | | |
| Days of the week available | | |
| | | |

IPL DRR-1 (Individual Customer) Contract
041310

Submitted to Company this __ day of _____ 20__,

**("Participant")**

By:_____

Printed:_____

Title:_____

**EXHIBIT 2**

**DEMAND RESPONSE RESOURCE TYPE 1 AGREEMENT**

Participant Information:

| *Participant Name:* | | |
|---|---|---|
| *Participant Location*<br>Street Address | City | State/Zip |
| *Account Number:* | | |

Participant Contact Information

      If MISO accepts an Offer requiring a Participant Curtailment, Participant identifies the following contact personnel with whom Company will communicate a Curtailment.

| *Primary Contact*<br>Name: | |
|---|---|
| Email: | Fax No.: |
| *Secondary Contact*<br>Name: | |
| Email: | Fax No.: |

Baseline Load

      Participant's Baseline Load is as follows: _____

Company Installed Equipment:

      The following additional software, metering or other equipment will be installed by the Company. Participant shall reimburse Company for all actual costs, which may vary from the estimated cost set forth below:

| *Equipment* | *Estimated Cost* |
|---|---|
| | |
| | |

IPL DRR-1 (Individual Customer) Contract
041310          -9-

Accepted:

**Indianapolis Power & Light Company
("Company")**

By:_____

Printed:_____

Title:_____

_____
**("Participant")**

By:_____

Printed:_____

Title:_____

IPL DRR-1 (Individual Customer) Contract
041310                                    -10-