# Exhibit 15

ORIGINAL

STATE OF INDIANA

INDIANA UTILITY REGULATORY COMMISSION

| | |
|---|---|
| IN THE MATTER OF THE COMMISSION'S ) | |
| INVESTIGATION INTO ANY AND ALL ) | CAUSE NO. 43566 PJM 1 |
| MATTERS RELATED TO COMMISSION ) | |
| APPROVAL OF PARTICIPATION BY INDIANA ) | PHASE II ORDER |
| END-USE CUSTOMERS IN DEMAND ) | |
| RESPONSE PROGRAMS OFFERED BY THE ) | APPROVED: MAY 1 8 2011 |
| MIDWEST ISO AND PJM INTERCONNECTION ) | |

**BY THE COMMISSION:**
**David E. Ziegner, Commissioner**
**Jeffery A. Earl, Administrative Law Judge**

On January 28, 2011, Petitioner Indiana Michigan Power Company ("I&M") filed its Tariff Filing, Request for Approval of Rider D.R.S. 2 (Demand Response Service -- Economic) and Request for Modification to Procedural Schedule for Phase III, as required by the Commission's July 28, 2010 Order in Cause No. 43566 (the "Generic DR Order"). *Commission's Investigation Into Any and All Matters Related to Commission Approval of Participation by Indiana End-Use Customers in Demand Response Programs*, Cause No. 43566, 2010 Ind. PUC LEXIS 255 (IURC July 28, 2010). The filing included I&M's Demand Response Service – Economic ("D.R.S. 2") Tariff.

On February 11, 2011, I&M filed the verified testimony of David Roush. On March 4, 2011, the Office of the Utility Consumer Counselor ("OUCC") filed the direct Testimony of Ronald Keen. Pursuant to notice given and published as required by law, proof of which was incorporated into the record of this Cause by reference and placed in the official files of the Commission, a public hearing was held on April 5, 2011, at 9:30 a.m. in Hearing Room 222, 101 W. Washington Street, Indianapolis, Indiana. I&M, the OUCC, and the I&M Indiana Industrial Group participated in the hearing. No members of the general public appeared. At the hearing, the comments and testimony prepared by I&M and the OUCC were admitted into evidence.

Based on the law and the evidence of record, the Commission now finds:

1.    **Notice and Jurisdiction.** Due, legal, and timely notice of the hearing in this Cause was given as required by law. Petitioner is a "public utility'' as defined in Ind. Code § 8-1-2-l(a) and is subject to the jurisdiction of this Commission in the manner and to the extent provided by Indiana law. The Commission has jurisdiction over Petitioner and the subject matter of this Cause.

2.    **Background.** In the Generic DR Order, the Commission ordered that "Indiana end-use customers shall not be enrolled or otherwise participate in [Regional Transmission Organization ("RTO")] demand response programs directly or through curtailment service providers or other aggregators." Generic DR Order, 2010 Ind. PUC LEXIS 255, at *149. The

Commission further ordered I&M (and the other Respondent Utilities) to file tariffs or riders, which authorize the participation of retail customers in RTO demand response programs through the Respondent Utility, for approval by the Commission. *Id.* These matters were further discussed with the Commission and its staff and the parties at a technical conference on September 7, 2010. Thereafter, I&M discussed the development of its compliance filing and its proposed schedule with parties interested in the PJM subdocket.

   3.     **Relief Requested.** I&M seeks approval of Rider D.R.S. 2 (Demand Response Service – Economic), which provides for end-use customer participation through I&M in the PJM Economic Demand Response Program.

   4.     **Evidence Presented.**

   A.     **I&M's Case-in-Chief.** As explained by I&M Witness David M. Roush, I&M held discussions with the other parties interested in the PJM subdocket to discuss the design of Rider D.R.S. 2. Based upon the feedback received, I&M made a number of modifications to its initial draft and circulated a final draft of Rider D.R.S. 2 to the parties for their review and comment. Mr. Roush indicated that I&M did not receive any comments on the final draft. Under Rider D.R.S. 2, customers can voluntarily respond to locational marginal prices ("LMP") by reducing consumption and receiving a payment for those reductions during times when LMP prices are high. Mr. Roush noted that customers may only enroll in the PJM Economic Demand Response Program through I&M.

   Participating customers may choose from three economic demand response options: (1) Day-Ahead Market; (2) Real-Time Market; and (3) PJM Dispatched in Real Time. Mr. Roush explained that participating customers will receive notifications from I&M and will also receive credits/payments from I&M for participation under Rider D.R.S. 2. He stated that customers will not receive credit for any curtailment periods to the extent the customer's curtailable load under Rider D.R.S. 2 is already reduced due to a planned or unplanned outage. Mr. Roush said that customers participating in Rider D.R.S. 2 must have an interval meter. The incremental cost of any special metering, communications, or control equipment required for service under Rider D.R.S. 2 beyond that normally provided by I&M is the customer's responsibility. Finally, Mr. Roush stated there is a monthly customer charge of $10 per account to offset the additional load determination and billing costs required for Rider D.R.S. 2.

   Mr. Roush also testified regarding the details of each of the three program options under Rider D.R.S. 2. He explained the method by which the payment or credit to the customer is calculated under each option and the circumstances under which a customer would be charged for failure to curtail its usage. He stated that customers are permitted to participate in both the economic (Rider D.R.S. 2) and emergency (Rider D.R.S. 1) demand response programs, consistent with the PJM rules, however, customers may not receive two energy payments for the same reduction. In other words, if a customer reduces usage under the emergency demand response program and is paid for the energy reduction under the emergency demand response program, they cannot also receive a payment for that same energy reduction in the economic demand response program.

2

Finally, Mr. Roush explained that Rider D.R.S. 2 allows end use customers to utilize the services of curtailment service providers ("CSPs"), so long as enrollment in the RTO program is accomplished through I&M. He stated that Rider D.R.S. 2 is no different than any other I&M tariff or rider which details a contractual relationship between I&M and the customer. The customer and I&M are responsible to each other for any commitments made under Rider D.R.S. 2 in the same manner that I&M and PJM are responsible to each other for any commitments under PJM's wholesale tariff demand response program. Mr. Roush explained that customers may designate a third-party (such as a PJM-qualified CSP) to receive notifications and/or transactions on their behalf. Customers may also choose to participate in Rider D.R.S. 2 as an aggregation wherein multiple customer accounts would participate in the same manner as a single customer under Rider D.R.S. 2. A customer who intends to utilize a CSP must provide written notice to I&M of the authority that the customer has granted the third-party. Mr. Roush stated that I&M does not plan to have a registration or certification process for CSPs. He noted that a customer may work directly with I&M, utilize a corporate or affiliate energy manager, engage an energy consultant, engage a PJM-qualified CSP, or form other possible relationships.

**B.    OUCC's Case-in-Chief.** OUCC Witness Ronald L. Keen testified in support of Rider D.R.S. 2. He testified that Rider D.R.S. 2 contains language clarifying the ability of customers to designate a third-party to receive notifications and/or payments on behalf of the customer and allows customers to participate as part of an aggregate in the same manner as a single customer. He stated the OUCC is convinced that well-designed and robust demand response with the broadest possible participation is in the best interest of all customers and that energy markets work best when end-use customers can respond to supply. He further explained that participation in demand response has the effect of contributing to grid stability and potentially lowering market prices. Mr. Keen believes that demand response programs offer yet one more tool in customers' financial and energy management strategies by increasing revenue while at the same time reducing energy expenses. He stated that CSPs may even be able to contract with clients in multiple programs in more than one region, allowing customers to increase revenue potential. Mr. Keen recommended that CSPs be allowed to help the Respondent Utilities offer specific end-use, customer-targeted energy management services that provide the ability to help optimize generation and operations through strategic and tactical initiatives.

**5.    Commission Discussion and Findings.** In the Generic DR Order, we required I&M (and the other Respondent Utilities) to file tariffs or riders authorizing the participation of retail customers in PJM demand response programs through the Respondent Utilities. We also recognized that each utility is different with unique load characteristics, cost structures, and tariffs. We believe that allowing differences in the tariffs also permits experimentation with the methodologies that can lead to adoption of best practices when the tariffs are revisited in 2 years. We acknowledge and appreciate the significant cooperation of the parties in this Cause, who have developed a rider that attempts to balance the interests of customers, CSPs, and I&M. Therefore, we find that I&M's proposed Rider D.R.S. 2 complies with the language set forth in the Commission's Generic DR Order, reasonably sets forth the terms and conditions applicable to a retail end-use customer, and should be approved.

Finally, in order to provide the Commission additional data concerning the distinctions among the demand response tariffs offered by the various Indiana regulated utilities, on or before October 31, 2012, I&M shall file a report with the Commission, under this Cause, describing its experience with the tariff and outlining the costs and expenses associated with the tariff and the administrative charges collected. I&M shall also provide discussion on the following issues, in addition to any other issues the utility finds appropriate:

1) how often the economic demand response offers were called upon;
2) how the load reductions were measured or documented, and issues with customers meeting their commitments and whether this improved as customers gained experience;
3) the number of aggregators, the number of customers being served by the aggregators, the types of customers being served by aggregators, and how this compares to those customers participating directly with the utility.

Within 30 days of filing its report, the OUCC and intervenors may file comments on the report and addressing other issues with the tariff.

**IT IS THEREFORE ORDERED BY THE INDIANA UTILITY REGULATORY COMMISSION that:**

1. I&M's Proposed Rider D.R.S. 2 is approved.

2. I&M shall file Rider D.R.S. 2 with the Electricity Division of the Commission prior to placing it into effect.

3. As discussed above, I&M shall file its report under this Cause with the Commission on or before October 31, 2012.

4. This Order shall be effective on and after the date of its approval.

**ATTERHOLT, MAYS AND ZIEGNER CONCUR; LANDIS ABSENT; BENNETT NOT PARTICIPATING:**

**APPROVED:** MAY 1 8 2011

**I hereby certify that the above is a true**
**and correct copy of the Order as approved.**

**Brenda A. Howe**
**Secretary to the Commission**

4