# Exhibit 17

ORIGINAL

## STATE OF INDIANA

## INDIANA UTILITY REGULATORY COMMISSION

| | |
|---|---|
| IN THE MATTER OF THE COMMISSION'S ) | |
| INVESTIGATION INTO ANY AND ALL ) | CAUSE NO. 43566 PJM 1 |
| MATTERS RELATED TO COMMISSION ) | |
| APPROVAL OF PARTICIPATION BY INDIANA ) | **PHASE III ORDER** |
| END-USE CUSTOMERS IN DEMAND ) | |
| RESPONSE PROGRAMS OFFERED BY THE ) | APPROVED: OCT 0 5 2011 |
| MIDWEST ISO AND PJM INTERCONNECTION ) | |

**BY THE COMMISSION:**
**David E. Ziegner, Commissioner**
**Jeffery A. Earl, Administrative Law Judge**

On July 8, 2011, Petitioner Indiana Michigan Power Company ("I&M") filed its Submission of Case-in-Chief and Request for Approval of Rider D.R.S. 3 (Demand Response Service – Ancillary Services), as required by the Commission's July 28, 2010 Order in Cause No. 43566 (the "Generic DR Order"). *Commission's Investigation Into Any and All Matters Related to Commission Approval of Participation by Indiana End-Use Customers in Demand Response Programs*, Cause No. 43566, 2010 Ind. PUC LEXIS 255 (IURC July 28, 2010). The filing included I&M's Demand Response Service – Ancillary Services ("D.R.S. 3") Tariff and the verified testimony of David Roush. On August 3, 2011, the Indiana Office of the Utility Consumer Counselor ("OUCC") filed the direct Testimony of Ronald Keen.

Pursuant to notice given and published as required by law, proof of which was incorporated into the record of this Cause by reference and placed in the official files of the Commission, a public hearing was held on September 19, 2011, at 9:30 a.m. in Hearing Room 222, 101 West Washington Street, Indianapolis, Indiana. I&M and the OUCC participated in the hearing. No members of the general public appeared. At the hearing, the comments and testimony prepared by I&M and the OUCC were admitted into evidence.

Based on the law and the evidence of record, the Commission now finds:

1. **Notice and Jurisdiction.** Due, legal, and timely notice of the hearing in this Cause was given as required by law. Petitioner is a "public utility" as defined in Ind. Code § 8-1-2-1(a) and is subject to the jurisdiction of this Commission, in the manner and to the extent provided by Indiana law. The Commission has jurisdiction over Petitioner and the subject matter of this Cause.

2. **Background.** In the Generic DR Order, the Commission ordered that "Indiana end-use customers shall not be enrolled or otherwise participate in [Regional Transmission Organization ("RTO")] demand response programs directly or through curtailment service providers or other aggregators." Generic DR Order, 2010 Ind. PUC LEXIS 255, at *149. The Commission further ordered I&M (and the other Respondent Utilities) to file tariffs or riders that authorize the participation of retail customers in RTO demand response programs through the

Respondent Utility, for approval by the Commission. *Id.* These matters were further discussed with the Commission and its staff and the parties at a technical conference on September 7, 2010. Thereafter, I&M discussed the development of its compliance filing and its proposed schedule with parties interested in the PJM subdocket.

      **3.**      **Relief Requested.** I&M seeks approval of Rider D.R.S. 3 (Demand Response Service – Ancillary Services), which provides for end-use customer participation through I&M in the PJM Demand Response Program.

      **4.**      **I&M's Case-in-Chief.** As explained by I&M Witness David M. Roush, I&M held discussions with the other parties interested in the PJM subdocket to discuss the design of Rider D.R.S. 3. Based upon the feedback received, I&M made a number of modifications to its initial draft and circulated a final draft of Rider D.R.S. 3 to the parties for their review and comments. Rider D.R.S. 3 is the result of this collaborative effort and does not necessarily reflect the position that I&M or the other parties may have taken individually. Under Rider D.R.S. 3, customers can have the opportunity to offer demand response to meet the needs of the transmission system and receive a payment or credit for such demand response. Customers may only enroll in the PJM Economic Demand Response Program through I&M.

      Mr. Roush explained that participating customers may choose from three options: (1) Day-Ahead Scheduling Reserves ("DASR"); (2) Synchronized Reserves ("SR") Market; and (3) Regulation Market. Participating customers are responsible for receiving and acting upon notifications from I&M and will receive credits/payments from I&M for participation under the Rider. However, customers will not receive credit for any curtailment periods to the extent the customer's demand response curtailable load under Rider D.R.S. 3 is already reduced due to a planned or unplanned outage. Customers participating in Rider D.R.S. 3 under the DASR or SR options must have one-minute interval metering. Customers participating in Rider D.R.S. 3 under the Regulation Market option must have real-time telemetry ("telemetering"). The incremental cost of any special metering, communications, or control equipment required for service under Rider D.R.S. 3, beyond that normally provided by I&M, is the customer's responsibility. In addition, there is a monthly customer charge of $150 per account to offset the additional load determination and billing costs required for Rider D.R.S. 3.

      Mr. Roush also testified regarding the details of each of the three program options under Rider D.R.S. 3. He explained the method by which the payment or credit to the customer is calculated under each option and the circumstances under which a customer would be charged for failure to curtail its usage. Customers are permitted to simultaneously participate in all three riders – the emergency (Rider D.R.S. 1), economic (Rider D.R.S. 2), and ancillary services (Rider D.R.S. 3). Consistent with PJM rules, however, customers may not receive payments under more than one rider for the same reduction. In other words, if a customer reduces usage under the emergency demand response program and is paid for the energy reduction under the emergency demand response program, it cannot also receive a payment for that same energy reduction in the economic or ancillary services demand response programs.

      Finally, Mr. Roush explained that Rider D.R.S. 3 allows end-use customers to utilize the services of curtailment service providers ("CSPs"), so long as enrollment in the RTO program is accomplished through I&M. This is consistent with I&M's approved Rider D.R.S. 1 and Rider

D.R.S. 2. I&M does not plan to have a registration or certification process for CSPs.

Mr. Roush testified that I&M is in the process of planning for the implementation of Rider D.R.S. 3, but the process is inherently much more complicated than either of the previous two riders. Due to the operational nature of the services that must be provided, both by the customer and by I&M, no generic or "off-the-shelf" system will be able to handle every eventuality. Rider D.R.S. 3 is real-time operationally oriented and can be very costly for both I&M and a potential customer to implement. As set forth in the rider, the customer will be billed the actual costs for I&M to set up and test its system to enable Regulation participation in Rider D.R.S. 3. These costs are incremental for each customer and are in addition to any software solution that I&M develops or implements for Rider D.R.S. 3. Further, given the complexity of these PJM programs, implementation of the necessary IT systems and interfaces to allow participation under Rider D.R.S. 3 could take several months to complete once an initial customer has qualified under the Rider. It is I&M's intention to continue the planning process for the implementation of Rider D.R.S. 3 and to work closely with a customer once that customer has successfully qualified for the Rider.

5. **OUCC's Case-in-Chief.** OUCC Witness Ronald L. Keen testified in support of Rider D.R.S. 3. He testified that Rider D.R.S. 3 contains language clarifying the ability of customers to designate a third-party to receive notifications and/or payments on behalf of the customer and allows customers to participate as part of an aggregate in the same manner as a single customer. The OUCC is convinced that well-designed and robust demand response with the broadest possible participation is in the best interest of all customers and that energy markets work best when end-use customers can respond to supply. Mr. Keen believes that demand response programs offered by CSPs have the potential to provide opportunities for both energy generators and the end-use customer. In addition, the OUCC believes that Rider D.R.S. 3 adequately allows member participation in a PJM demand response program through CSPs and recommends its approval.

6. **Commission Discussion and Findings**. In the Generic DR Order, we required I&M (and the other Respondent Utilities) to file tariffs or riders authorizing the participation of retail customers in PJM demand response programs through the Respondent Utilities. We also recognized that each utility is different with unique load characteristics, cost structures, and tariffs. We believe that allowing differences in the tariffs also permits experimentation with the methodologies that can lead to adoption of best practices. Therefore, we find that I&M's proposed Rider D.R.S. 3 complies with the language set forth in the Commission's Generic DR Order, reasonably sets forth the terms and conditions applicable to a retail end-use customer, and should be approved.

Finally, in order to provide the Commission additional data concerning the distinctions among the demand response tariffs offered by the various Indiana regulated utilities, on or before October 31, 2012, I&M shall file a report with the Commission, under this Cause, describing its experience with the tariff and outlining the costs and expenses associated with the tariff and the administrative charges collected. I&M shall also provide discussion on the following issues, in addition to any other issues the utility finds appropriate:

1) how often the demand response offers were called upon;

2) how the load reductions were measured or documented, and issues with customers meeting their commitments and whether this improved as customers gained experience;

3) the number of aggregators, the number of customers being served by the aggregators, the types of customers being served by aggregators, and how this compares to those customers participating directly with the utility.

Within 30 days of filing its report, the OUCC and intervenors may file comments on the report and addressing other issues with the tariff.

**IT IS THEREFORE ORDERED BY THE INDIANA UTILITY REGULATORY COMMISSION that:**

1.     I&M's Proposed Rider D.R.S. 3 is approved.

2.     I&M shall file Rider D.R.S. 3 with the Electricity Division of the Commission prior to placing it into effect.

3.     As discussed above, I&M shall file its report under this Cause with the Commission on or before October 31, 2012.

4.     This Order shall be effective on and after the date of its approval.

**ATTERHOLT, BENNETT, LANDIS AND ZIEGNER CONCUR; MAYS ABSENT:**

**APPROVED:**    OCT 0 5 2011

**I hereby certify that the above is a true and correct copy of the Order as approved.**

_Brenda A. Howe_
**Brenda A. Howe**
**Secretary to the Commission**

-4-